IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PROGENYHEALTH, INC., | : | Case No. 3:17-cv-00065 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| CARESOURCE MANAGEMENT GROUP, CO., | : | |
| Defendant. | : | |

**ENTRY AND ORDER GRANTING MOTION TO DISMISS (DOC. 10) BY DEFENDANT CARESOURCE MANAGEMENT GROUP, CO.**

This case is before the Court on the Motion to Dismiss (Doc. 10) filed by Defendant CareSource Management Group, Co. ("CareSource"). Plaintiff Progeny Health ("Progeny") provides neonatal case management and coordination services for newborn infants. CareSource is a managed care company that contracts with state agencies to provide managed care health plans to the public and, particularly, to individuals who receive Medicaid or equivalent state-supported healthcare. In June 2015, CareSource entered into a three-year agreement with Progeny for its services. In December 2016, CareSource decided that it would no longer refer newborns to Progeny, although it expected Progeny to continue managing newborns who had already been referred. Progeny alleges that CareSource's decision to stop referring newborns is a breach of their agreement and brought this lawsuit for declaratory judgment and breach of contract against it.

CareSource moves to dismiss Progeny's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. CareSource argues that it does not have any obligation to continue referring newborns to Progeny and, therefore, its decision to stop doing so was not a breach of their agreement.

As discussed below, the Court may construe the parties' agreement as a matter of law on CareSource's Motion to Dismiss because its terms are clear and unambiguous. Those terms do not place any duty on CareSource to refer any number of eligible newborns to Progeny during the term of the agreement. Consequently, Progeny has not alleged a breach of the agreement and CareSource is entitled to dismissal of the Complaint. The Court therefore **GRANTS** the Motion to Dismiss (Doc. 10).[1]

I. **THE COMPLAINT'S ALLEGATIONS**

Progeny has provided neonatal case management and coordination services to more than 1,000 hospitals and 6,000 healthcare providers across the country. (Doc. 1 at ¶ 5.) CareSource is an Ohio-based, non-profit company that contracts with state agencies to provide managed health care to the public, including to Medicaid and other state-supported healthcare recipients. (*Id.* at ¶ 8.) In 2015, for example, CareSource contracted with the Ohio Department of Medicaid to provide managed care plans to eligible residents in the State of Ohio. (*Id.* at ¶9.)

On June 11, 2015, Progeny and CareSource entered into a Delegated Services Agreement (the "Agreement"). (Doc. 1 at ¶ 11.) Under the Agreement, Progeny agreed,

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Christin Dale in drafting this opinion.

upon referral by CareSource, to coordinate continuing care for newborns who are admitted to a hospital's special care unit or Neonatal Intensive Care Unit ("NICU") at any time from birth through their first year of life. (*Id.* at ¶¶ 12-3; Doc. 1-2, Ex. A.) In return, CareSource agreed to pay Progeny a one-time fee of $150,000 to implement the program and an additional $2,150 for each newborn that it referred. (Doc. 1-2, Ex. A-1.)

The Agreement provides for a phased implementation of Progeny's services, beginning with a 120-day pilot program in Northeast Ohio. (*Id.*, Ex. A.) After the successful completion of the pilot, the parties could agree to extend the program beyond Northeast Ohio. (*Id.*) The Agreement provides for a three-year term, unless otherwise terminated by the parties. (Doc. 1-2 at ¶ 6.1.) From October 1, 2015 through December 31, 2016, Progeny provided services to over 1,900 newborns referred by CareSource pursuant to the Agreement. (*Id.* at ¶¶ 15-16.)

By letter dated December 8, 2016, CareSource told Progeny that, effective January 1, 2017, it would no longer refer newborns to Progeny for services. (Doc. 1-4.) CareSource has not referred any newborns to Progeny in 2017. (Doc. 1 at ¶ 37.)

Progeny contends that CareSource's refusal to refer newborns is a breach of the Agreement. On February 24, 2017, Progeny filed this lawsuit against CareSource for declaratory judgment and breach of contract. (Doc. 1.) Progeny seeks a declaratory judgment holding that the Agreement does not permit CareSource "to unilaterally and prematurely cease referring eligible newborns" to Progeny and, therefore, CareSource is in breach of the Agreement. Under the breach-of-contract claim, Progeny alleges that it

3

is entitled to damages for CareSource's breach of the Agreement based on the same conduct. (*Id*. at ¶¶ 50-57.)

On April 14, 2017, CareSource filed its Motion to Dismiss the Complaint. (Doc. 10.) Progeny filed a memorandum in opposition (Doc. 11), in response to which CareSource filed a reply (Doc. 12). The Motion to Dismiss is therefore fully briefed and ripe for review. The Court has diversity jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. (Doc. 1 at ¶¶ 1-2 (Progeny is a PA corporation with its headquarters in PA; CareSource is an OH corporation with its headquarters in OH).)

## II.  LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept as true all "well-pleaded allegations" in the complaint. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012). The court need not accept, however, "a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

4

## III. ANALYSIS

Progeny's declaratory judgment claim and breach-of-contract claim both hinge on whether CareSource's decision to stop referring newborns to Progeny—a decision that CareSource has adhered to—constituted a breach of the Agreement. In support of its Motion to Dismiss, CareSource refers to Section 2.16 of the Agreement, which conditions Progeny's entitlement to payment on CareSource's referral of newborns. It states, for example, that "*[i]f* CareSource refers an eligible individual and Contractor provides services based on that initial eligibility representation, those services shall be eligible for payment," and "*[i]f* CareSource does not refer an eligible individual and Contractor provides services based on that initial eligibility, *but no referral from CareSource*, those services shall not be eligible for payment," and finally, "Neonatal Medical Management and Case Management Services and coordination of care provided to each CONTRACTOR Program Newborn admitted at birth to a hospital's special care unit or NICU during the First Year effective *upon Newborn case referral from CareSource*." (Doc. 10 at 9 (emphasis added).) CareSource argues that these provisions can only be interpreted to provide CareSource the discretion, not the obligation, to refer newborns to Progeny. CareSource further notes the absence of any provision in the Agreement placing an affirmative obligation on it to refer any number of newborns to Progeny during the term of the Agreement.

Conversely, Progeny argues that nothing in the Agreement permits CareSource to "unilaterally and without cause" cease referring eligible newborns to Progeny. (Doc. 1 at 8.) Progeny claims that no fewer than nineteen provisions in the Agreement impose

5

an affirmative duty on CareSource to refer all eligible newborns to Progeny. (Doc. 11 at 7-10.) Progeny refers, for example, to provisions stating that it must provide services to "Contractor Program Newborns" and "Members" for certain periods. (Doc. 1-2 at 20-21.) Progeny argues that, if CareSource were permitted to stop referring newborns at will, it would render Progeny's obligation to provide these services meaningless.

The parties agree that all disputes under the Agreement "shall be governed by, construed and enforced according to the laws of the State of Ohio, without regard to the conflict of laws or legal theory upon which such matter is asserted." (Doc. 1-2 at § 6.12.) Under Ohio law, "[w]hen a contract is clear and unambiguous, a court need not interpret the language and must enforce the agreement by attributing the plain and ordinary meaning to the language as written." *Mercer v. 3M Precision Optics, Inc.*, 2009-Ohio-930, ¶ 9 (Ct. App.). Furthermore, "[a] contract does not become ambiguous because its operation may work a hardship upon one party." *Fultz & Thatcher*, 2006-Ohio-7041, ¶ 29 (Ct. App.). "The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract." *Id.* (quoting *Montgomery v. Bd. of Educ. of Liberty Twp., Union Cty.*, 102 Ohio St. 189, 193 (1921)). Interpreting the terms of a clear and unambiguous contract is a question of law to be decided by the court. *Scartz*, 2001-Ohio-8866 at 4 (Ct. App.); *Am. Coal Sales Co. v. Nova Scotia Power Inc.*, No. 2:06-CV-94, 2009 WL 467576, at *27 (S.D. Ohio Feb. 23, 2009).

Here, the Agreement is clear and unambiguous. Section 2.16 of the Agreement provides that CareSource may or may not refer newborns to Progeny. This meaning is

6

clearly expressed by the introduction of several of its clauses with the word "if." *Washington Twp. Bd. of Trustees v. McLaughlin*, No. 14830, 1995 WL 634374, at *2 (Ohio Ct. App. Sept. 29, 1995)(observing "if" is used to introduce a negative conditional clause or "to introduce a subjunctive clause, meaning *in the event that, granting that, or on condition that*.") (emphasis in original) (superseded on other grounds). The basic thrust of these clauses is that, if CareSource refers an eligible newborn, then Progeny is entitled to payment. CareSource's discretion is underscored by the clause stating that, without CareSource's referral, Progeny is not entitled to payment, even if it rendered services to an eligible newborn. (Doc. 1-2 at § 2.16.) This clause only makes sense if CareSource has the discretion to decline to refer an "eligible" newborn—meaning a newborn to whom Progeny *could* provide services and be paid under the Agreement.

Progeny fails to identify any provision in the Agreement that expressly imposes an affirmative duty on CareSource to refer eligible newborns—or any number of them—to Progeny. Instead, Progeny refers to language in nineteen different provisions, most of which impose duties on Progeny. Progeny cites one of the introductory "Whereas" clauses of the Agreement, which states only that CareSource "wishes to engage" Progeny's services. (Doc. 1-2 at 3.) This clause cannot be reasonably read to impose any duty regarding referrals, especially in light of the qualifier—which Progeny omitted from its brief—that CareSource wishes to engage Progeny's services "under the terms and conditions set forth herein." (*Id.*) Section 1.1, which Progeny also cites, likewise fails to impose any duty on CareSource. It states only that Progeny "shall

7

provide the services" set forth in the Agreement, again "[s]ubject to the terms and conditions contained herein." (*Id.* at 4.)

Progeny also refers to Exhibit A of the Agreement, which "provides an overview of the Neonatal Medical Management and Case Management Services that [Progeny] will provide to [CareSource], as well as a framework for ramping up these services and measuring the success of the program." (*Id.* at 21.) The express purpose of Exhibit A is to describe the scope of Progeny's services, not CareSource's duties and obligations. It would be inconsistent with that express purpose to construe Exhibit A to impose a material, affirmative obligation on CareSource. Yet, Progeny argues just that. Not only is such an interpretation flawed *ab initio* for this reason, but Exhibit A does not support Progeny's interpretation in any event.

Progeny notes, for example, that Exhibit A requires Progeny to provide "[n]eonatal case management and case management services and coordination of care" to "each Contractor Program Newborn." (*Id.*) This provision is qualified, however, by the further statement that it is "effective upon Newborn case referral from CARESOURCE." (*Id.*) Other Exhibit A provisions cited by Progeny are likewise accompanied by language indicating that Progeny's obligations are conditional on CareSource's action or referral. Progeny is to provide "telephonic concurrent utilization review of all NICU admissions," but only "from the time of notification by CareSource through discharge from the hospital." (*Id.* at 21.) The plain language of this provision states that Progeny's review will be triggered by CareSource's notification.

8

Progeny also cites a provision in the "High Risk Case Management Services" section of Exhibit A stating that Progeny "will engage at least forty percent (40%) of Members eligible for high risk case management." (Doc. 1-2 at 22.) Progeny argues that it would be impossible for it to meet this requirement if CareSource does not refer any newborns to it. Read in context, however, this provision provides assurance that Progeny has the staff and resources to service a minimum number of newborns requiring urgent care. This provision also cuts against Progeny's argument that CareSource was obligated to refer "all" eligible newborns to Progeny for services. If CareSource expected to refer *all* eligible newborns to Progeny, there would be no reason to explicitly state that Progeny must engage at least 40% of those requiring high risk case management services. Progeny also refers to a provision in the same section stating that it "will ensure staffing ratio of 1:25 exists for high risk case manager to Member." (*Id.*) This provision also serves to ensure that Progeny is properly staffed to service a high risk population, not that CareSource will refer a certain number of newborns to Progeny.

Progeny also refers to the three-year term of the Agreement and various provisions indicating that the parties' obligations run through the Agreement's entire term. Progeny further argues that the Agreement may only be terminated for cause, but CareSource effectively terminated the Agreement when it stopped making referrals. Neither the three-year term nor the termination-for-cause provision were rendered meaningless, however, when CareSource stopped referring newborns. Until the Agreement expires, Progeny still must provide services to newborns who were

previously referred. In its letter to Progeny, CareSource expressly stated that it expected Progeny to continue providing these services. (Doc. 1-4.) In addition, if CareSource were to resume referrals to Progeny before the three-year term expires, Progeny would be required to provide services to those newborns pursuant to the Agreement. Progeny's argument that CareSource effectively terminated the Agreement therefore fails.

Progeny finally claims that interpreting the Agreement to permit CareSource to stop referring newborns, at its discretion, would render the Agreement illusory. (Doc. 11 at 12.) As Progeny notes, "[a]n illusory promise arises when a promisor retains the right to decide whether or not to perform the promised act." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000). When one party to a contract has made only illusory promises, or none at all, the contract fails because there is no mutuality of obligation. "Stripped to its essence, the concept of mutuality of obligation expresses the idea that 'both parties to the contract must be bound or neither is bound.'" *Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 834 (S.D. Ohio 2007).

Here, both CareSource and Progeny had and continue to have obligations to each other, even though the Agreement permits CareSource the discretion to stop referring newborns to Progeny. First, CareSource was required to pay Progeny a $150,000 implementation fee upon execution of the Agreement, regardless of whether CareSource ever referred a single newborn to Progeny. (Doc. 1-2, Ex. A-1 ($150,000 due in two installments: first $75,000 upon execution and second $75,000 upon the sooner of expansion statewide or on six month anniversary of execution).) Second, as noted above, Progeny is obligated to maintain certain staffing levels to service CareSource

10

referrals. Third, upon referral by CareSource, the parties' mutual obligations are plain. Progeny must provide the services described in Exhibit A and CareSource must pay Progeny the management fees set forth in Exhibit A-1. (Doc. 1-2.) Fourth, Progeny's obligation to provide services to newborns who have already been referred continues through their first year of life, therefore Progeny's obligations are ongoing even though it has not received any new referrals this year. (Doc. 1-2, Ex. A.) In addition, Progeny agreed to "coordinate the process of transitioning Newborns requiring ongoing case management services after the First Year to the case management program within CARESOURCE." (*Id.*) CareSource has a reciprocal obligation to work in collaboration with Progeny to complete this transition of newborns into CareSource's case management program. (*Id.*) A mutuality of obligation therefore exists under the Agreement, whether or not CareSource refers newborns to Progeny for its entire three-year duration.

In the end, this is a case where the Court must accept the clear and unambiguous terms of an Agreement entered into by two sophisticated parties. The Sixth Circuit has held that, under Ohio law, where "parties are experienced businessmen, regularly engaged in contract negotiation, formation and contract modification, they are charged with applying the meaning and intent that the express language of their contracts manifests." *Energy Mktg. Servs. v. Homer Laughlin China Co.*, 186 F.R.D. 369, 376 (S.D. Ohio 1999); *see also Skivolocki v. East Ohio Gas Co.*, 38 Ohio St. 2d 244, 247 (1974) ("It is a well-known principle that contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.") Progeny's claims

are premised upon a construction of the Agreement that contradicts its plain language. Progeny therefore fails to state a claim for breach of contract as a matter of law.

Progeny argues that CareSource has not challenged its declaratory judgment claim, but CareSource moved to dismiss the Complaint "in its entirety." (Doc. 10 at 1-2.) Moreover, both the declaratory judgment claim and breach-of-contract claim seek the same relief—a ruling that CareSource breached the Agreement when it stopped referring newborns to Progeny. The Court's interpretation of the Agreement as a matter of law is dispositive of both of Progeny's claims. The declaratory judgment claim therefore must be dismissed with the breach-of-contract claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss (Doc. 10) and **DISMISSES** the Complaint (Doc. 1) in its entirety.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, June 15, 2017.

                                              s/Thomas M. Rose
                                    _____
                                            THOMAS M. ROSE
                                    UNITED STATES DISTRICT JUDGE